Jesús Estela, demandante y apelante, *v.* Mario Mercado e Hijos, demandada y apelada.

. No. 5855.—*Sometido:* Enero 17, 1933. *Resuelto:* Febrero 17, 1933.

*López de Tord & Zayas Pizarro,* abogados del apelante; *Tous Soto & Zapater,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

La presente es una acción iniciada para remover y destruir un estorbo de carácter público. Se imputa a la demandada el hecho de haber cerrado un camino que, según el demandante, ha sido destinado desde tiempo inmemorial al servicio público. Se alega en la demanda que la sociedad demandada es dueña de una finca denominada "Buena Vista", que está atravesada por la carretera insular que une a Guayanilla con Ponce y que radica en el barrio Playa de Guayanilla; que frente a la piedra que marca el kilómetro 5, hec-

tómetro 3 de dicha carretera, sitio el Peñoncillo, se halla la entrada de un camino que atraviesa terrenos de la hacienda Buena Vista y une la carretera de Guayanilla a Ponce, con el poblado denominado La Playa de Guayanilla; que dicho camino tiene alrededor de 6 metros de ancho y una longitud de unos 200 y pico de metros; que este camino se viene usando desde tiempo inmemorial por todos los vecinos de Guayanilla, especialmente por los vecinos de la Playa de Guayanilla que tienen acceso desde la carretera, camino que los dueños de la Hacienda Buena Vista han respetado siempre, sosteniendo a cada lado una cerca de alambre para dejarlo completamente separado de los terrenos de la hacienda para beneficio del público; que el demandante Jesús Estela es dueño de dos fincas, una de 70 cuerdas y otra de 50, radicadas en el municipio de Guayanilla, barrio Las Magas, que tiene sembradas de cañas de azúcar, y las cuales cañas, en virtud de contrato con la Central Bocachica del barrio Capitanejos de Juana Díaz, las transporta por medio del ferrocarril de la American Railroad Company of Puerto Rico; que dicha American Railroad Company convino en establecer un cargadero para el traslado de dichas cañas en lugar contiguo al poblado de la Playa, de Guayanilla, el cual fué suspendido al ser cerrado el camino que daba acceso a dicho cargadero por la aquí demandada Mario Mercado e Hijos, y que el ferrocarril está dispuesto siempre a continuar y terminar dicho cargadero y que para conducir las cañas hasta dicho sitio el demandante tiene necesidad de pasar con carros de bueyes por el mencionado camino; que en diciembre del año 1929, la demandada colocó en la entrada de dicho camino un portón que mantiene continuamente cerrado por medio de candado, negándose dicha demandada a mantener abierto dicho camino, a pesar de la protesta de los vecinos, incluyendo el aquí demandante, y que el demandante no puede llevar sus cañas hasta el cargadero que se está construyendo sin usar el mencionado camino que obstruye la demandada; que es la primera vez que dicha demandada impide el tránsito

por dicho camino y que dicha obstrucción constituye un estorbo público, ya que impide el libre tránsito por un camino vecinal sobre el cual la demandada no tiene un interés superior al de la comunidad, constituyendo asimismo dicho portón un estorbo privado, ya que priva individualmente al demandante de su uso, y que las actuaciones de la demandada se deben al hecho de haber el demandante dejado de ser su colono, y haber hecho un contrato de molienda con otra central, tomando así represalias contra el aquí demandante y que con tal motivo el demandante para cumplir con su contrato con la Central Bocachica se ha visto obligado a llevar sus cañas a larga distancia hasta la zona urbana de Guayanilla, cuya distancia no le permite al demandante hacer un traslado en forma regular, dando esto lugar a que parte de dichas cañas se pierdan por exceso de madurez y causándole al demandante la acción de la demandada al obstruir dicho camino daños y perjuicios de consideración, irreparables o de difícil determinación, careciendo el demandante de todo remedio rápido y eficaz en el curso ordinario de la ley, con excepción de la acción para remover dicho *nuisance,* y que la demandada a pesar de ser requerida, se ha negado a quitar dicho portón y que una compensación pecuniaria en este caso no constituye un remedio adecuado, siendo la remoción de dicho *nuisance* necesaria para evitar una multiplicidad de procedimientos.

La demandada niega en su contestación el carácter público del camino que ha sido obstruído, alegando que dicho camino es un callejón privado de la hacienda Buena Vista que parte cerca de su colidancia norte, y atraviesa dicha finca de norte a sur, cortando la carretera insular y terminando en el mar. Niega que dicho camino se haya usado por tiempo inmemorial y alega que hace muchos años quedó interrumpido el tránsito de carros con motivo de la construcción de las vías del ferrocarril que lo cortó por un talud que se eleva a considerable altura sobre el nivel del mismo y sobre una alcantarilla de dos metros sesenta centímetros.

La Corte de Distrito de Ponce dictó sentencia declarando sin lugar la demanda y condenando en costas al demandante. No conforme éste con el fallo dictado, interpuso el presente recurso de apelación. Examinaremos en primer término las cuestiones fundamentales planteadas por el apelante en los errores tercero, cuarto y quinto, y tocaremos de paso algunos puntos discutidos en el primer error que se relacionan con la inspección ocular.

Alega el demandante que la corte inferior erró al desestimar la demanda bajo la teoría de que la acción ejercitada se basa en una servidumbre de paso para beneficio de su propiedad, cuando en realidad lo que el demandante pide en este caso es la destrucción de un estorbo público que impide el uso del mencionado camino vecinal no solamente al demandante sino también a los demás vecinos de la jurisdicción. Alega además el apelante que la corte erró al no resolver que el mencionado camino ha sido consagrado al uso público desde tiempo inmemorial y que por lo tanto el dominio del mismo ha prescrito a favor del público, mediante consagración para tal objeto, de acuerdo con la doctrina de esta corte en *Saldaña* v. *Concejo Municipal de San Juan,* 15 D.P.R. 37.

No hay duda de que el fin que persigue la parte actora es la remoción de un estorbo que, según sus alegaciones, impide a los vecinos y al propio demandante el uso de un camino que desde tiempo inmemorial ha sido consagrado al público. La corte inferior dice en sus conclusiones que el mencionado camino parte de la antigua factoría de la hacienda Buena Vista y termina en la Playa. En la diligencia de inspección ocular el juez hace constar que la entrada de este camino es por la plaza de la hacienda Buena Vista y no por la carretera. Los abogados del demandante arguyen que estas conclusiones de la corte no están justificadas, ya que la carretera insular intercede entre dicha finca y el camino. Convenimos con los abogados del apelante en que lo único que pudo observar la corte en la inspección ocular es que

hay un camino que va desde el establecimiento de la hacienda hasta la carretera, y que cerca de ella hay un camino que parte de la carretera y llega al mar, que es el camino en litigio. Se hace, sin embargo, la observación de que la corte no pudo decir que se tratara de un mismo camino, o de caminos distintos, porque para averiguarlo habría tenido que depender de manifestaciones que le hicieran personas que no habían prestado juramento. No debemos olvidarnos de que la inspección ocular se llevó a cabo después de practicada la prueba testifical, cuando ya la corte conocía la declaración del propio demandante Jesús Estela y de su testigo Ramón Lugo, y las declaraciones de los testigos de la demandada. Estela nos dice en la página 42 de la transcripción de evidencia que el camino parte de la hacienda Buena Vista, atraviesa la carretera, y va a terminar a la playa, si se coge toda la orilla del mar, y su propio testigo Ramón Lugo declara que el camino está sobre terrenos de la hacienda Buena Vista, y que antes de llegar a la carretera dicho camino arranca de la hacienda. No creemos que la corte incurriera en error alguno al decir que la entrada del camino era por la plaza de la hacienda, o que el camino partía de dicho punto si así lo observó, para continuar, luego de atravesar la carretera, hasta la vía del ferrocarril; pero aun cuando se admitiera que se trata de una conclusión y no de la consignación de un hecho, no hay motivos para asumir que la corte se basó en manifestaciones que se le hicieran sin la sanción de un juramento cuando ya tenía el beneficio de las declaraciones del demandante y su testigo y de la prueba de la parte demandada que es amplia y clara sobre este particular.

También dice la corte inferior en sus conclusiones que este camino fué abierto por un Sr. Villoch para conducción de azúcares y mieles a la playa, y que ha dejado de usarse desde la construcción del ferrocarril de 1891 para tener acceso al mar. Tanto los testigos del demandante como los de la demandada convienen en que anteriormente fueron dueños de la finca Buena Vista ciertas personas de apellido

Villoch. Balbina Villoch, testigo del demandante, dice que nació un mes después del cólera y que perteneció a la familia Villoch. A preguntas del abogado del apelante dice que ese camino lo hizo don Emiliano Villoch para transitar la gente por allí, y preguntada por el abogado de la demandada si don Emiliano Villoch abrió ese camino para pasar con sus carros, sus azúcares y su miel y embarcalas en ancones para Ponce, contesta que sí y que además pasaba la gente por allí. El testigo de la demandada Ercilio Forgas, quien dijo tenía 115 años de edad, declara que quien abrió el camino fué don Pedro Villoch y que don Emiliano, su hijo, fué quien lo arregló. Según este testigo el camino se abrió para conducir azúcar a la entrada del muelle. Esta fué la prueba que tuvo bajo su consideración la corte inferior para decir que este camino fué abierto por un Sr. Villoch. No puede negarse que la prueba tiende a demostrar que el camino fué abierto por los antiguos dueños de la hacienda Buena Vista para su beneficio y que se permitió al público el tránsito por dicho camino. La conclusión de la corte de que este camino ha dejado de usarse desde que fué obstruído por la vía del ferrocarril en 1891 está sostenida por la prueba de ambas partes, en lo que respecta al paso de carros para cruzar la vía y llegar al sitio denominado La Playita. Se alega que por ese camino continúa pasando gente a pie a pesar de la obstrucción, y creemos que se ha probado que alguna gente continuó pasando por allí. Lo que no admite dudas es que no pueden pasar carros y que los terrenos ocupados por la vía constituyen la propiedad privada de la American Railroad Company. Por lo menos el demandante así lo reconoce al aceptar el permiso que aparece concediéndole la referida corporación para cruzar la vía precisamente por el punto por donde se dice pasa gente a pie, atravesando dicha vía. El Sr. Estela dice que hay que hacer un terraplén para que los carros puedan subir y entonces pasar al otro lado del ferrocarril. El permiso concedido por la compañía del ferrocarril al Sr. Estela se hizo constar por escrito y fué firmado

por el propio demandante y por el administrador general de la compañía ferroviaria Sr. E. Jiménez. En dicho permiso se dice que "el camino del peticionario (se refiere al demandante Jesús Estela) tiene su origen en la carretera y a una distancia de 100 metros del origen cruza la vía de la compañía a un ángulo de 90 grados y que el peticionario queda autorizado a cruzar la vía de la compañía por el referido sitio en el kilómetro 257/615 de la vía general, entendiéndose que este paso es privado, para uso exclusivo del peticionario, sus agentes o empleados." En el referido permiso se dice que el Sr. Estela colocará y conservará por su cuenta a la entrada del camino y a cada lado de la vía y a cinco metros de su eje un aviso prohibiendo el paso. El permiso se extiende por el término de dos años, es personal y no podrá ser traspasado a ninguna otra persona sin el consentimiento, expresado por escrito, de la compañía, la cual se reserva el derecho de cancelar dicho permiso en cualquier tiempo, previo aviso al peticionario de treinta días.

Reconoce en este documento el Sr. Estela el derecho de la compañía a impedir que se utilice el camino, atravesando la vía, desde el momento en que se aviene a que se prohiba el paso y en que acepta una concesión de carácter personal y privado. No aparece del documento suscrito por Estela que esta prohibición se limite exclusivamente a los carros. Sencillamente se impone al demandante la obligación de colocar un aviso prohibiendo el paso. El permiso para cruzar la vía se limita a los meses de zafra, para que el Sr. Estela pase con sus cañas, quedando el camino cerrado el resto del año. Estas precauciones que adopta la compañía ferroviaria para proteger los intereses públicos y para su propia protección no parecen indicar una disposición de ánimo para haber permitido anteriormente el cruce por la vía al público en general, como alega el demandante. Así tiende a demostrarlo el testimonio del jefe de transporte del

ferrocarril, Manuel Jovet, quien declara que los reglamentos del ferrocarril no permiten atravesar la vía, pero que aquí hay muchas cosas que, aunque se prohiben, se hacen.

La posición del Sr. Estela es algo difícil de explicar. Sostiene que el público transita por ese camino y al mismo tiempo acepta que se prohiba el paso a ese mismo público, cuyos derechos invoca para promover esta acción, y se aviene a cooperar con la compañía, obligándose a colocar el aviso requerido. Este camino tiene, de un extremo a otro, o sea desde la carretera a la vía, una extensión de cien metros, según se admite en el mencionado permiso. La vía tiene como dos metros y medio de altura sobre el nivel del camino. Sin el paso por la vía el camino no conduce a ningún sitio determinado, como no sea a la finca Buena Vista, cuyos terrenos atraviesa. Si nosotros no interpretamos equivocadamente el permiso suscrito por el Sr. Estela, éste acepta que se haga, para su exclusivo beneficio, aquello que quiere prohibir a la demandada, o sea la clausura del camino, con la única diferencia de que en un caso se cierra dicho camino con un portón al entrar por la carretera y en el otro con un aviso en el extremo opuesto colocado en la vía. Este camino, según la corte inferior, no figuró como camino vecinal ni en el municipio de Guayanilla ni en el Departamento del Interior. El alcalde de Guayanilla, Benigno Rodríguez, declara que no se ha presentado queja alguna con motivo de la clausura del camino y que nunca ha tenido noticia oficial o extraoficialmente, de que se haya presentado reclamación por algún vecino sobre dicho camino.

■■ Pero es más, aun cuando el estorbo en realidad sea de carácter público, entendemos que un ciudadano privado, para tener derecho a obtener su remoción, debe alegar y probar la existencia de un perjuicio especial. En el caso de *Saldaña* v. *Concejo Municipal de San Juan, supra,* sólo intervinieron cuatro jueces, dos de los cuales opinaron que debía revocarse el fallo de la corte inferior y dos que debía sostenerse, quedando subsistente dicho fallo en la forma en que

fué dictado por la corte sentenciadora. Si se estudia cuidadosamente la opinión de la corte emitida por el Hon. Juez McLeary, se observará que éste sostiene que los demandantes alegaron un interés especial y haber sufrido perjuicios especiales. En esta opinión manifiesta el Juez McLeary que los demandantes no trataron de ejercitar solamente un derecho de carácter público, sino que ejercitaron un recurso para obtener reparación de ciertos perjuicios especiales que se describen en la opinión. Insiste el Juez McLeary en mantener este criterio, como puede verse en las páginas 45, 46, 49 y 50 de su opinión publicada en el tomo 15 de las decisiones de este tribunal. El Juez Wolf, en su opinión disidente sostiene que no se alegó ni probó la existencia de un perjuicio especial tal como esta expresión debe ser entendida en derecho. La diferencia que se advierte entre el criterio de la corte y el del juez disidente se relaciona más bien con una cuestión de hecho que de derecho. En principio parece que ambas opiniones están de acuerdo, aunque el Juez Wolf sostiene con más énfasis que el Juez McLeary el derecho exclusivo del "Attorney General" a promover la acción cuando no se alegan perjuicios especiales. Nosotros creemos que este principio debe sostenerse, porque así lo requiere la ley vigente y para evitar multiplicidad de acciones.

El artículo 277 del Código de Enjuiciamiento Civil, que describe lo que es un estorbo, autoriza el ejercicio de una acción por cualquier persona cuyos bienes hubieren sido perjudicados o cuyo bienestar personal resulte menoscabado por la perturbación o *nuisance*. Nuestra ley de *injunction*, en su artículo 12, dice así: "Podrá concederse un *injunction* a petición de El Pueblo de Puerto Rico, para prohibir y suprimir la conservación y mantenimiento de un perjuicio común. La petición será jurada por el fiscal del distrito en que el perjuicio común exista, o por el Attorney General, según su leal saber y entender, y no será necesaria ninguna fianza."

La acción que se ejercita en el presente caso con el pro-

pósito de remover un estorbo que se califica de público tiene el carácter de un *injunction* mandatorio. En el estado de California se aprobó en 1905 una enmienda al artículo 731 del Código de Enjuiciamiento Civil, muy parecida a la sección 12 de nuestra ley de *injunction*. En esta enmienda se dice que se puede promover una acción en el nombre del pueblo del estado de California para remover un estorbo público, por el fiscal del distrito del condado o por el abogado de la ciudad o pueblo donde el estorbo exista y que tanto el fiscal del condado como el abogado de la ciudad deben iniciar la acción cuando se lo ordene la junta de superintendentes del condado o la autoridad legislativa del pueblo o ciudad. La sección 12 de nuestra ley de *injunction,* como el artículo que acabamos de citar, autoriza una acción a nombre del Pueblo de Puerto Rico y dice que la petición será jurada por el fiscal del distrito donde exista el estorbo o por el Attorney General. A nuestro juicio, en el caso de un estorbo público es el pueblo el que debe promover la acción a iniciativa de sus representantes legales, a menos que se hubiesen ocasionado perjuicios especiales a un ciudadano privado, en cuyo caso éste tendría un derecho de acción de acuerdo con el artículo 277 del Código de Enjuiciamiento Civil.

En el caso de *Johnson* v. *V. D. Reduction Co.,* 175 Cal. 63, se alegó por los apelantes que si bien es cierto que el artículo 731 del Código de Enjuiciamiento Civil reconocía expresamente a cualquier persona perjudicada en sus bienes o en su bienestar personal el derecho de promover una acción con el fin de remover un estorbo, la enmienda de que fué objeto dicho artículo en 1905, autorizando al fiscal o al abogado de un pueblo o ciudad para promover la acción, surtía el efecto de despojar a un ciudadano privado del derecho de demandar para obtener la remoción de un estorbo público. Resolviendo la cuestión planteada la Corte Suprema de California se expresó en los siguientes términos:

"Resulta claro que no fué la intención de la legislatura al aprobar la enmienda destruir o afectar los derechos concedidos por el artículo,

con anterioridad a la enmienda, a las personas privadas para mantener acciones, solicitando la remoción de un estorbo, ya sea éste de carácter privado o público, cuando el efecto del mismo seriamente afecta a su salud, a su bienestar personal o convierte su hogar en un sitio impropio para ser habitado.''

Hemos citado esta decisión para demostrar que aun en el mismo estado de California se creyó que la enmienda de 1905 arrebataba a los ciudadanos privados el derecho de obtener la remoción de un estorbo público, de acuerdo con el artículo 731 del Código Californiano que en este particular concuerda con el 277 del nuestro. La Corte Suprema de dicho estado resolvió que cuando se ocasionan perjuicios especiales a una persona privada, ésta puede ejercitar la acción. El siguiente párrafo, que copiamos del tomo 20 de la Jurisprudencia de California, página 272, expone con claridad la doctrina mantenida en dicho estado, donde existen disposiciones idénticas a las que están en vigor en Puerto Rico:

''El daño proveniente de un estorbo público puede ser resarcido, por regla general, solamente a instancias del pueblo. 'Una persona particular puede incoar un procedimiento para abatir un estorbo público, especialmente si le es perjudicial, mas no si ocurre lo contrario.' Esta fraseología del código expresa una regla fundamental y universal, y las autoridades en apoyo de la misma son uniformes. La regla es aplicable tanto a litigios en equidad para abatir un estorbo público como a acciones en derecho para recobrar daños y perjuicios. A fin de que pueda sostenerse el procedimiento el daño especial causado al demandante debe ser el resultado inmediato de conducta o condición ilegal. La enmienda de 1905 al artículo 731 del Código de Enjuiciamiento Civil, que faculta a los fiscales para incoar *motu proprio* procedimientos para abatir estorbos públicos y que les obliga a hacerlo así a instancias de la autoridad legislativa local, no afectó el derecho previamente concedido por este artículo a personas particulares para que incoaran procedimientos para abatir un estorbo que les ocasiona daños especiales. Aunque aseverándose que un individuo puede atacar un estorbo público solamente fundándose en daños especiales, se ha dicho que el remedio se concede no solamente porque el estorbo le es peculiar sino también debido al hecho de que el público resultará beneficiado. Empero, sea ello como fuere, es cuestión resuelta, que si el estorbo es considerado como público, que ocasiona

daños especiales, será abatido totalmente, mientras que si el daño se considera como un estorbo privado, el remedio se limitaría a la protección que debe darse a los derechos particulares del peticionario. Y de esto resultaría una multiplicidad de procedimientos—uno por cada persona perjudicada.''

De acuerdo con la jurisprudencia citada, aun cuando se pruebe la existencia de un estorbo público, la acción para removerlo no puede prosperar sin antes demostrarse que se han ocasionado perjuicios especiales a la persona que interesa la remoción del estorbo. ¿Concurren estas circunstancias en el presente caso? Estela obtuvo permiso de la compañía ferroviaria para pasar sus carros por la vía cuando estuviese puesta a nivel con el camino mediante la ejecución de ciertas obras que no llegaron a realizarse debido a la clausura del referido camino. En el documento que se redactó no se menciona el camino como vecinal o público, sino como el camino del peticionario. Esto lo suscribe el propio Sr. Estela. La compañía se reserva el derecho de cancelar el permiso. Estela acepta el permiso exclusivo de pasar sus carros por la vía y para recibir este beneficio especial, con exclusión del público, pide la apertura del camino. Los daños especiales alegados en la demanda dependen de este permiso, concedido por una tercera persona. La prueba testifical con respecto a estos daños especiales se manifiesta en abierto conflicto. La corte inferior, que oyó declarar a los testigos, nos dice en su opinión que el demandante terminó su corte de cañas y acarreo de las mismas, que tiene fácil acceso a la estación del ferrocarril y que no ha sufrido perjuicios.

Se alega que la corte inferior incurrió en errores al hacer constar por escrito sus observaciones en la diligencia de inspección ocular. La corte dijo que el camino en litigio estaba dentro de los terrenos pertenecientes a la hacienda Buena Vista. Bien, esto es la verdad. El mismo Sr. Estela dice en su demanda que el camino atraviesa terrenos de la hacienda Buena Vista. Convenimos en que la corte se extendió en consideraciones que están fuera de lugar, como las

que se relacionan con la boyada del Sr. Estela, y considéramos inoportunas sus manifestaciones cuando dijo que la traslación de cañas de los terrenos de Estela para nada necesita del camino en litigio y que las cañas de Estela se conducen al apeadero de la American Railroad Company. En la inspección ocular el Juez debe limitarse a describir el sitio con la mayor exactitud posible, sin emitir juicio alguno acerca de los hechos observados, especialmente cuando este juicio puede indicar el fallo que ha de dictarse. La corte debió reservarse sus conclusiones para formularlas luego en su opinión. Estas conclusiones, sin embargo, no tienen la importancia que les atribuye el demandante. Estudiando detenidamente las alegaciones y la prueba aportada en este caso, se llega a la conclusión de que, con inspección ocular o sin ella, había que dictar un fallo declarando sin lugar la demanda.

Se admitió como prueba, con la oposición del demandante, un plano levantado por el ingeniero Alberto Hernández. En este plano se marcan los límites de los terrenos de la American Railroad Company en relación con el camino en litigio y la declaración del ingeniero Hernández versó principalmente sobre la dificultad, a su juicio, de construir un terraplén para que puedan pasar carros por la vía, utilizando únicamente los terrenos de la compañía ferroviaria. Esta prueba carece de importancia y no juega papel alguno en la resolución del caso.

Se alega por último que la corte cometió error al condenar en costas al demandante. No creemos injustificado el pronunciamiento del tribunal inferior.

*Debe confirmarse la sentencia apelada.*